1  Craig C. Marchiando (SBN 283829)
   Leonard A. Bennett, *pro hac vice forthcoming*
2  Elizabeth Hanes, *pro hac vice forthcoming*
   **CONSUMER LITIGATION ASSOCIATES, P.C.**
3  763 J. Clyde Morris Blvd., Suite 1-A
   Newport News, VA 23601
4  Tel: 757-930-3660
   Fax: 757-257-3450
5  craig@clalegal.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Eastern Division

| | |
|---|---|
| **MICHELLE S. SIMMONS,** | Civil Action No. _____ |
| **Plaintiff,** | |
| **v.** | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT** |
| **NAPHCARE, INC., and EXPERIAN INFORMATION SOLUTIONS, INC.,** | (DEMAND FOR JURY TRIAL) |
| **Defendants.** | |

COMES NOW the Plaintiff, Michelle Simmons, by Counsel, and for her Complaint against Defendants Naphcare, Inc. and Experian Information Solutions, Inc., alleges as follows:

## I.     PRELIMINARY STATEMENT.

1.     Plaintiff brings this Complaint for willful violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA"), against Defendants Naphcare and Experian Information Solutions, Inc. after Experian improperly reported to Naphcare that Plaintiff had filed for bankruptcy when she had not. As a result of Experian's mistake, Naphcare withdrew a conditional offer of employment that Plaintiff would have otherwise kept.

2.     When it denied Plaintiff employment, Naphcare failed to first provide her with a copy of the Experian report and a written summary of her FCRA rights. This is commonly known as "pre-adverse action" notice, as the Act demands that it come before an adverse action like denial or withdrawal of employment.

3.     Naphcare also violated the FCRA in accessing Plaintiff's report without having statutory permission to do so. Viewing a consumer report issued for employment purposes, like the report at issue here, requires disclosure to and authorization from Plaintiff. Here Naphcare did neither, yet it still obtained Plaintiff's report when communicating with her about employment.

4.     The FCRA requires consumer reporting agencies ("CRAs") like Experian to utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). Experian fell short of such procedures when it inaccurately reported Plaintiff had filed for bankruptcy when she had not. This mistake caused Plaintiff a job opportunity with Naphcare for which she was otherwise qualified and would have kept.

5.     The FCRA also imposes upon employers like Naphcare requirements of notice before they take adverse actions against applicants. Naphcare failed to provide such notice to Plaintiff, which discovery will show is a systemic violation that occurs with every applicant Naphcare rejects because of information contained in consumer reports it obtains in the hiring process.

6.     Plaintiff brings a nationwide class claim against Naphcare for its withdrawal of its conditional offer of employment based on the contents of a consumer report without first providing Plaintiff with pre-adverse action notice. She brings individual claims against Experian for its failure to follow reasonable procedures to assure the maximum possible accuracy of the information it provided to Naphcare.

7.     Plaintiff also brings nationwide class claims against Naphcare for its obtaining and using applicants' consumer reports in the employment context without

having the statutory permission to do so. Naphcare routinely obtains consumers' reports in the employment context without first meeting the statutory prerequisites.

8. Plaintiff seeks actual damages, statutory damages, punitive damages as the Court may allow, equitable relief, and her attorneys' fees and costs for Defendant's willful violations.

## II. JURISDICTION AND VENUE.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Experian resides within the boundaries of the Central District of California. Venue is also appropriate here because the position for which Plaintiff applied was located in Victorville, so a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

## III. PARTIES.

11. Plaintiff Michelle Simmons is a natural person who resides in this Judicial District and Division. She is a "consumer" as defined in 15 U.S.C. § 1681a(c).

12. Defendant Experian Information Solutions, Inc. ("Experian") is a corporation existing under the laws of Ohio with its principal place of business in Costa Mesa, California.

13. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

14. Experian disburses consumer reports to third parties, under contract, for monetary compensation.

15. Defendant Naphcare is a contractor that fills positions in the Federal Prison System with employees like Plaintiff. At all relevant times, Naphcare used and obtained

"consumer reports" "for employment purposes" as those terms are defined and used in the FCRA.

## IV.  FACTS.

16.    In September 2017, Ms. Simmons applied for a medical billing assistant position through Naphcare. Had she been hired, Ms. Simmons would have been contracted by Naphcare to work at the Federal Prison in Victorville, California.

17.    On September 13, 2017, Ms. Simmons interviewed with a Naphcare representative by phone. The next day, the Naphcare representative informed Ms. Simmons by email that she would be contacted for a second interview.

18.    On September 18, 2017, Ms. Simmons had a second telephone interview with a different Naphcare representative.

19.    Ms. Simmons followed-up on September 26, and was granted a third interview on September 28.

20.    On October 2, a Naphcare representative emailed Ms. Simmons paperwork for her to complete and forward to the prison. A Naphcare representative emailed Ms. Simmons a second time on October 2, congratulating her and welcoming her to the Naphcare team.

21.    Naphcare offered Ms. Simmons employment contingent on her passing a background check.

22.    Ms. Simmons completed the Naphcare paperwork and returned it to Naphcare on October 2, 2017. She also emailed the Naphcare representative and indicated her excitement about being employed with Naphcare.

23.    At no point during the application process did Ms. Simmons obtain a disclosure of Naphcare's intent to obtain a consumer report about her, and she likewise did not authorize Naphcare in writing to do so.

24.    On October 3 Ms. Simmons emailed the Naphcare representative to reveal that she had a vehicle repossessed in May of 2015. This occurred because Ms. Simmons'

spouse was ill during that time, and his inability to work affected their combined capacity to make the vehicle payments. She reported that the account appeared as a charge-off on her credit reports.

25.     On October 5, a representative from the Bureau of Prisons informed Ms. Simmons that the investigation into her background revealed that she had filed for bankruptcy, her credit was poor, and that she would have to show proof of financial responsibility to continue with her employment at Naphcare.

26.     Ms. Simmons responded that she had no idea what information the representative was viewing and requested a copy of the report. The representative did not provide her with a copy of the report, and neither did anyone at Naphcare. This individual did, however, state to Ms. Simmons that the bankruptcy information came from an Experian report. She also made it clear to Ms. Simmons that the request for additional documentation was based on the information in the Experian report.

27.     Naphcare sent Ms. Simmons a letter dated October 9, 2017, explaining that Naphcare was withdrawing her offer of contingent employment. The letter was final and unequivocal—Ms. Simmons would not be working for Naphcare. That letter did not include a copy of the consumer report on which this decision was based or a written copy of Ms. Simmons' FCRA rights.

28.     Ms. Simmons communicated with Naphcare and the Bureau of Prisons in an attempt to save her job, but was told only that she had to dispute the inaccuracies in her consumer report with the consumer reporting agencies and, if the position remained open, reapply.

29.     During her discussions with Naphcare's representatives, it became clear to Ms. Simmons that Naphcare had a copy of the Experian report that the Bureau of Prisons obtained.

30.    Through her own, independent efforts, Ms. Simmons was able to obtain from Experian the consumer report it supplied to Naphcare and the Bureau for their use in their hiring processes.

31.    The Experian report showed bankruptcy entries and other tradelines that did not belong to Ms. Simmon. Ms. Simmons spoke to an Experian representative about the inaccuracies, disputing that they belonged to her.

32.    The individual with whom Plaintiff spoke at Experian explained that the report belonged to a different Michelle Simmons and Plaintiff Simmons should destroy it.

33.    Experian did nothing regarding Ms. Simmons' disputes, failing in its duties to investigate and correct inaccuracies or cease reporting information it cannot verify.

34.    Experian's mis-reporting of bankruptcy information is the reason Naphcare withdrew its offer of employment from Ms. Simmons.

35.    Moreover, Naphcare's failure to provide Ms. Simmons with the appropriate notice deprived her of her statutory rights to know the information that was being reported about her, and also to have an opportunity to discuss or dispute the information before Naphcare made its decision to withdraw her conditional offer of employment.

## V.    LEGAL REQUIREMENTS.

### A.    The Statutory Provisions Applicable to Naphcare.

36.    Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates --
>
> (i)    a copy of the report; and
>
> (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by

37.     The purpose of § 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken, and generally to discuss the contents of the report with the prospective employer.

38.     This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Naphcare) could obtain and use a consumer's personal information consumer report.

39.     In enacting this FCRA provision, Congress also expressly sought to guarantee important, material information be provided to Plaintiff and consumers like her with respect to use of a consumer report for an employment adverse action.

40.     Plaintiff and each putative class member has been substantively harmed and injured by Naphcare in the violation of their personal privacy and in the deprivation of the congressionally mandated information.

41.     The accessing of consumer reports is presumptively illegal. The FCRA carefully restricts their use to certain enumerated purposes, "and no other." 15 U.S.C. § 1681b(a).

42.     For an entity like Naphcare to obtain and use a report in the employment context, it must disclose such intent to the consumer in a document that consists solely of the disclosure, and obtain the consumer's written authorization. *Id*. § 1681b(b)(1).

43.     One who intends to obtain a consumer report must also certify to the CRA its statutory purpose for obtaining the report. *Id.* § 1681b(f).

**B.      Experian's Statutory Duties.**

44.     Section 1681e(b) demands that CRAs like Experian utilize reasonable procedures to ensure the maximum possible accuracy of the information they report in any context. 15 U.S.C. § 1681e(b).

45.     This requirement has been part of the FCRA since its enactment in 1970, and requires that CRAs ensure that the information they report is both genuinely accurate and, although technically accurate, not reported such that it is misleading.

46.     Pertinent here, this requirement demands that CRAs only include information in a report that pertains to the consumer who is the subject of that report. It is per se inaccurate to include information about a different, unrelated individual in a consumer's report.

47.     Section 1681i of the FCRA requires that CRAs reasonably investigate consumers' disputes of information in their reports. 15 U.S.C. § 1681i. Ms. Simmons contacted Experian by phone to dispute the contents of the report Experian provided about her, providing her identifying information and stating that the information included in the report Experian created did not belong to her.

48.     Rather than conducting a searching, genuine investigation of Ms. Simmons' dispute, Experian simply relied on its error-prone system and merely confirmed the errors it had already reported.

## VI.    ALLEGATIONS OF COMMON FACTS.

### A.    Defendants' Practices And Policies.

49.     Naphcare has created and implemented national, uniform hiring and staffing policies, procedures, and practices under which it and its subsidiaries operate. Those policies, procedures, and practices cover the use of "background checks" or "consumer reports" to screen potential employees.

50.     Discovery will show that through its relationship with the Bureau of Prisons, Naphcare is the true employer of individuals like Plaintiff, while the Bureau has the ability to refuse to permit an individual on its premises who does not meet certain criteria.

51.     Naphcare routinely uses consumer reports to screen prospective employees, which reports include information from Experian. As a matter of practice, Naphcare regularly fails to provide copies of consumer reports to job applicants against whom it

takes an adverse action based in whole or part on consumer reports, before taking that adverse action.

52.     As a matter of practice, Naphcare regularly fails to provide copies of the FTC or CFPB notice of rights to job applicants against whom it takes an adverse action based in whole or part on a consumer report, before taking that adverse action.

53.     Naphcare likewise uses consumer reports in the employment context without following the statutory requirements before doing so. It routinely fails to disclose to consumers that it will obtain consumer reports about them and thereafter fails to obtain consumers' written authorization to obtain and use reports about them in its hiring process.

54.     Along these same lines, Naphcare regularly fails to certify to CRAs like Experian here its intended purpose for obtaining applicants' reports. Naphcare therefore obtains and uses consumer reports without having an FCRA permissible purpose.

55.     As a matter of course, Naphcare uses the same business process for obtaining and using consumer reports, and for the rejection of employment applications as it did with Plaintiff and members of the Classes described below. In communicating final adverse actions to consumers without first providing notice, Naphcare deprives consumers of any reasonable time period by which to dispute or discuss any inaccurate or derogatory information in their background reports before a final hiring decision is made.

56.     As a result of these FCRA violations, Naphcare is liable to Plaintiff, and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

57.     Naphcare's conduct and omissions were willful. Because the FCRA was enacted in 1970, Naphcare has had years to become compliant but has failed to do so.

58.     Naphcare, a nationwide employer, was aware of obligations under the FCRA as they relate to employment because it hired Experian to provide it information for use

in the employment context and purports to use background checks routinely in its hiring process.

59. Naphcare therefore knew of the requirements imposed upon it by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

60. The key aspect of Experian's business is obtaining public-record information, like bankruptcy information, and providing it to clients like Naphcare.

61. Discovery will confirm that Experian obtains some of this information automatically, using technology called "web scrape" that gathers information directly from government entities that house bankruptcy records.

62. Discovery will further confirm that Experian also buys public-record information in bulk, from third parties that specialize in obtaining such information.

63. Whichever method Experian uses, discovery will show that it takes no independent steps to verify the correctness of the electronic information it obtains. Put simply, Experian blindly reports the information it receives after its computer systems determine that the information is a match to the consumer on whom it is providing information.

64. Experian therefore undertakes no separate process by which it even attempts to confirm that the public-record information it reports is accurate. The result is the circumstance here—Experian reports damaging information about the wrong Michelle Simmons, and it cost this Michelle Simmons a job.

**B.    Defendants Acted Willfully.**

65. Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau. Defendants obtained or had available substantial written materials, which apprised them of their duties under the FCRA.

66.    Defendants obtained or had available substantial written materials which informed them of their duties under the FCRA.

67.    The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's standalone disclosure, authorization, and pre-adverse-action-notice requirements. *See* 15 U.S.C. § 1681b(b)(1).

68.    In accordance with their standard procedures, the consumer reporting agencies from whom Naphcare acquired consumer reports during the five years preceding the filing of this Complaint, including Experian, required Naphcare to certify that it would comply with the notice provisions of the FCRA.

69.    Discovery will show that before procuring Plaintiff's report, Naphcare did, in fact, certify to Experian and other consumer reporting agencies that it would comply with the pre-adverse-action-notice provisions of the FCRA.

70.    In its contract with Experian, Naphcare also agreed that before obtaining a consumer report, should it choose to take an adverse action against a consumer based on information in such reports, it would provide pre-adverse-action notice to the consumer.

71.    Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter (noting that taking action a period of five business days after notice "appears reasonable"); *Williams v. Telespectrum, Inc.*, No. 3:05-cv-853 (E.D. Va. 2006), Report & Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to

respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va. 2009) (providing, by Consent Order, ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the Pre-adverse Action Notices).

72.    To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report.  15 U.S. C. § 1681b(b)(1)(A).

73.    Discovery will show that Naphcare was aware of these statutory obligations and yet failed to meet them at nearly every turn.

74.    Despite knowing of these legal obligations, Naphcare acted consciously in breaching its known duties and depriving Plaintiff and other members of the Class of their rights under the FCRA.

75.    As a result of these FCRA violations, Naphcare is liable to Plaintiff and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

76.    Experian's conduct was also willful. Experian has been sued thousands of times over inaccurate reporting, so it is well aware of shortcomings in its reporting of information that does not belong to a particular consumer in general and its failure to correctly report bankruptcy-related information specifically.

## VII.  CLAIMS FOR RELIEF AND CLASS ALLEGATIONS.

### COUNT ONE:
### CLASS CLAIM AGAINST NAPHCARE FOR VIOLATIONS OF
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681b(f)

77.    Plaintiff incorporates all previously pleaded facts by reference as though set forth fully herein.

78.    Plaintiff brings a claim against Naphcare on behalf of a nationwide class of similarly situated individuals (the "Impermissible Use Class"), defined as:

> All natural persons in the United States (including all territories and other political subdivisions of the United States) (a) who submitted an employment application or other request for placement to Naphcare or any of its subsidiaries and received a conditional job offer; and (b) who were the subject of a consumer report which was obtained to make an employment decision from five years before the filing of this Action through the date the class list is prepared.

> Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Naphcare releases of all their claims for all of their Class claims; and (d) Plaintiff's counsel and persons who work for them or are related to them by marriage or as immediately family.

79.    **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Based on information and belief, the Class is comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by Naphcare or Experian, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

80.    **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be Naphcare's uniform conduct and procedures; whether Naphcare certified its proposed use of reports to CRAs like Experian; whether Naphcare disclosed its intent to obtain consumer reports to applicants; whether Naphcare obtained applicants'

written authorization to obtain consumer reports; and whether Naphcare acted willfully in its failure to design and implement procedures to assure compliance with its statutory obligations. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Class.

81. **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Naphcare uses common practices and automated systems in committing the conduct that Plaintiff alleges damaged her and the Class. Plaintiff seeks only statutory and punitive damages for her classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Naphcare uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Class.

82. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex FCRA class actions across the country.

83. **Superiority.** Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Naphcare's conduct. It would be virtually impossible for the members of the Class to individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of Naphcare to give Class Members the proper notice. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

84.    Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Naphcare's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

85.    Discovery will show that although Naphcare obtained Plaintiff's Experian report as part of her application process, Naphcare never certified to Experian that it had an FCRA permissible purpose for obtaining that report. 15 U.S.C. § 1681b(f).

86.    Naphcare therefore violated Section 1681b(f) for every report it obtained for applicants like Plaintiff, all of whom are members of the Impermissible Use Class.

87.    Naphcare's violations of Section 1681b(f) were willful, as the statutory language clearly imposes upon entities like Naphcare the requirement that they certify to a CRA their FCRA permissible purpose before obtaining a consumer report. As a result of Naphcare's willful violations of 15 U.S.C. § 1681b(f), Ms. Simmons and Impermissible Use Class Members are entitled to statutory damages.

88.    Because Naphcare's violations were willful, it is also liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

89.    Ms. Simmons and Impermissible Use Class Members are therefore entitled to recover statutory damages, punitive damages, costs and attorney's fees from Naphcare in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n & § 1681o.

### COUNT TWO
### CLASS CLAIM AGAINST NAPHCARE FOR VIOLATIONS OF
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681b(b)(3)

90.    Plaintiff incorporates all previously pleaded facts by reference as though set forth fully herein.

91.    Plaintiff brings a claim against Naphcare on behalf of a nationwide class of similarly situated individuals (the "Adverse Action Class"), defined as:

All natural persons in the United States (including all territories and other political subdivisions of the United States) (a) who submitted an employment application or other request for placement to Naphcare or any of its subsidiaries and received a conditional job offer; and (b) who were the subject of a consumer report which was obtained to make an employment decision from five years before the filing of this Action through the date the class list is prepared; and (c) for whom Naphcare withdrew its conditional offer of employment due in whole or in part to the contents of the consumer report.

Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Naphcare releases of all their claims for all of their Class claims; and (d) Plaintiff's counsel and persons who work for them or are related to them by marriage or as immediately family.

92. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Based on information and belief, the Class is comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by Naphcare or Experian, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

93. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be Naphcare's uniform conduct and procedures; whether rejecting an applicant for employment under circumstances like Plaintiff's is an "adverse action" subject to the FCRA notice requirements; whether Naphcare provided the required notices; when it did so; and whether Naphcare acted willfully in its failure to design and implement procedures to assure compliance with its statutory obligations. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Class.

94. **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Naphcare uses common practices and automated systems in

committing the conduct that Plaintiff alleges damaged her and the Class. Plaintiff seeks only statutory and punitive damages for her classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Naphcare uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Class.

95. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex FCRA class actions across the country.

96. **Superiority.** Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Naphcare's conduct. It would be virtually impossible for the members of the Class to individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of Naphcare to give Class Members the proper notice. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

97. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Naphcare's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

98.   Discovery will show that although Naphcare took an adverse action against Plaintiff—withdrawing her conditional offer of employment—due to the contents of her Experian report. Before taking that adverse action, however, Naphcare did not provide Plaintiff with a copy of the report or a written summary of her FCRA rights, violating 15 U.S.C. § 1681b(b)(3).

99.   Naphcare's failure to provide notice to Plaintiff was not isolated or accidental, as discovery will show that it routinely and as a matter of course fails to provide the report and summary of rights any time it withdraws a conditional offer of employment because of the contents of a consumer report. Naphcare therefore violated Section 1681b(b)(3) as to every individual in the Adverse Action Class.

100.   Naphcare's violations of Section 1681b(b)(3) were willful, as the statutory language clearly imposes upon entities like Naphcare the easy-to-follow requirement that they provide a copy of the report and summary of FCRA rights before taking an adverse action based in whole or in part on the contents of the report. As a result of Naphcare's willful violations of 15 U.S.C. § 1681b(b)(3), Ms. Simmons and Adverse Action Class Members are entitled to statutory damages.

101.   Because Naphcare's violations were willful, it is also liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

102.   Ms. Simmons and Adverse Action Class Members are therefore entitled to recover statutory damages, punitive damages, costs and attorney's fees from Naphcare in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT THREE:
### INDIVIDUAL CLAIM AGAINST EXPERIAN FOR VIOLATION OF
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b)

103.   Ms. Simmons realleges and incorporates all other factual allegations set forth in this Complaint.

104.   Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the

consumer reports it furnished regarding Plaintiff by erroneously listing the bankruptcy information relating to a different consumer on the report it provided to Naphcare.

105.   As a result of Experian's violations of 15 U.S.C. § 1681e(b), Ms. Simmons suffered actual damages including, by example, loss of employment, embarrassment, humiliation, stress, lack of sleep, and lost time attempting to correct Experian's error.

106.   Experian has been sued again and again for its failure to meet the maximum possible accuracy requirement of Section 1681e(b). It is aware that its computerized systems and processes constantly create errors like the one in Plaintiff's report, yet it has failed to genuinely address its systems so that such errors are minimized or eliminated.

107.   The violations by Experian were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Ms. Simmons to recovery under 15 U.S.C. § 1681o.

108.   Ms. Simmons is therefore entitled to recover actual damages, punitive damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT FOUR:
### CLAIM AGAINST EXPERIAN FOR VIOLATION OF
### FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)(1)

109.   Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

110.   After Ms. Simmons's dispute, Experian violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Ms. Simmons's credit file.

111.   Experian has been sued again and again for its failure to properly investigate consumer disputes. It is aware that its computerized systems and processes fall short of the established standards that it conduct a searching inquiry into consumer disputes, yet it

has failed to genuinely address its systems so that its investigations are appropriately conducted.

112. As a result of Experian's violations of 15 U.S.C. § 1681i(a)(1), Ms. Simmons suffered actual damages.

113. The violations by Experian were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Ms. Simmons to recovery under 15 U.S.C. § 1681o.

114. Ms. Simmons is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT FIVE:**
**CLAIM AGAINST EXPERIAN FOR VIOLATION OF**
**FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)(4)**

115. Ms. Simmons realleges and incorporates all other factual allegations set forth in the Complaint.

116. After Ms. Simmons's dispute, Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider *all* relevant information provided by Ms. Simmons.

117. As a result of Experian's violations of 15 U.S.C. § 1681i(a)(4), Ms. Simmons suffered actual damages.

118. Experian has been sued again and again for its failure to properly investigate consumer disputes. It is aware that its computerized systems and processes fall short of the established standards that it conduct a searching inquiry into consumer disputes, yet it has failed to genuinely address its systems so that its investigations are appropriately conducted.

119. The violations by Experian were willful, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §

1681n. In the alternative, Experian was negligent, which entitles Ms. Simmons to recovery under 15 U.S.C. § 1681o.

120. Ms. Simmons is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT SIX:**
**CLAIM AGAINST EXPERIAN FOR VIOLATION OF**
**FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i(a)(5)(A)**

121. Ms. Simmons realleges and incorporates all other factual allegations set forth in the Complaint.

122. After Ms. Simmons's dispute, Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Ms. Simmons's credit file or modify the item of information upon a lawful reinvestigation.

123. Experian was aware that it was misreporting information about Ms. Simmons, as its representative told Ms. Simmons to destroy the report Experian provided to her because it belonged to a stranger Michelle Simmons.

124. As a result of Experian's violations of 15 U.S.C. § 1681i(a)(5)(A), Ms. Simmons suffered actual damages.

125. Experian has been sued again and again for its failure to properly investigate consumer disputes. It is aware that its computerized systems and processes fall short of the established standards that it conduct a searching inquiry into consumer disputes, yet it has failed to genuinely address its systems so that its investigations are appropriately conducted.

126. The violations by Experian were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Ms. Simmons to recovery under 15 U.S.C. § 1681o.

127. Ms. Simmons is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT SEVEN:**
**CLAIM AGAINST EXPERIAN FOR VIOLATION OF**
**FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681g**

128. Ms. Simmons realleges and incorporates all other factual allegations set forth in the Complaint.

129. Experian violated 15 U.S.C. § 1681g by failing to clearly and accurately disclose to Ms. Simmons all of the information in Ms. Simmons's file at the time of her request. When Ms. Simmons made her request, Experian provided the file of a different Michelle Simmons.

130. As a result of Experian's violations of 15 U.S.C. § 1681g, Ms. Simmons suffered actual damages. Experian's violation prevented Ms. Simmons from identifying inaccurate information in her report and correcting it because the information Experian provided was about a different Michelle Simmons.

131. Experian is aware of its requirement that it correctly communicate all information in a consumer's file when the consumer requests it. It has been sued multiple times by consumers to enforce this requirement, yet it often fails to meet this most-basic of the FCRA's mandates.

132. The violations by Experian were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, which entitles Ms. Simmons to recovery under 15 U.S.C. § 1681o.

133. Ms. Simmons is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## VIII.  PRAYER FOR RELIEF.

Plaintiff therefore respectfully requests that this Court:

(1)     Certify this case as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative and her Counsel as Counsel for the Classes;

(2)     Order Naphcare to create a common fund to reimburse Plaintiff and Class Members for its violations of the FCRA;

(3)     Award Plaintiff individually actual and punitive damages for Experian's violations of the FCRA;

(4)     Award Plaintiff attorneys' fees and costs under the FCRA;

(5)     Award Plaintiff postjudgment interest; and

(6)     Award other relief, including equitable relief, as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED.**

July __, 2019.

Respectfully submitted,

**MICHELLE SIMMONS**

By:    _/s/ Craig C. Marchiando_
Craig C. Marchiando (SBN 283829)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: 757-930-3660
Fax: 757-257-3450
craig@clalegal.com

***Attorney for Plaintiff***